Argued December 19, 1977; resubmitted in banc July 26, 1978, affirmed January 15, reconsideration denied March 13, petition for review denied June 13, 1979, 286 Or 637

CLARK et al, *Appellants,*
*v.*
DAGG et al, *Respondents,*
and
MERRILL, *Intervenor-Respondent.*
(No. 36-676, CA 8222)
588 P2d 1298

Richard P. Benner, Portland, argued the cause for appellants. With him on the briefs was William P. Hutchison, Jr., Portland.

DeMar L. Batchelor, Hillsboro, argued the cause for intervenor-respondent. With him on the brief was Schwenn, Bradley & Batchelor, Hillsboro.

No appearance for respondents Virginia Dagg, Ray Miller, Richard C. Heisler, Michael Shepherd and J. Allan Paterson.

GILLETTE, J.

Joseph, J., concurring in part and dissenting in part.

## GILLETTE, J.

Plaintiff Community Planning Organization #7 (CPO #7) appeals from the dismissal of its petition for a writ of review. The only issue is whether it has standing to obtain review. We agree with the trial judge that it does not and affirm.

The petition for writ of review was filed May 11, 1976, by the petitioners Robert S. Clark and CPO #7. It alleged that Gordon Merrill was seeking a zone change from the Board of Commissioners of Washington County. It alleged, *inter alia,* that plaintiff Robert S. Clark "is a property owner and resident of Beaverton, Oregon, and resides northeast of and in reasonable proximity to the area [where the zone change was sought]." It further alleged that CPO #7 "is a duly organized and established citizens' advisory planning committee and neighborhood organization, organized as provided in the Board's Washington County Comprehensive Framework Plan adopted November 27, 1973, as amended (hereinafter 'CFP'), and the Merrill property is within the boundaries of the area represented by CPO #7." There was a further allegation that the substantial rights of residents who are represented by CPO #7 had been injured by the defendants' exercise of their quasi-judicial authority.

The petition also alleged that the Washington County Planning Commission had recommended denying the requested zone change, but that the defendant county commissioners had granted the change. The petition then alleged seven different ways in which the Board's decision was alleged to have been procedurally defective.

The court issued its writ of review on the 11th day of May, requiring a return be made on or before June 14, 1976. A second amended order for writ of review was issued on May 25, 1976, with the same return date.

Not surprisingly, on September 27, 1976, the real party in interest—Gordon Merrill, the developer—sought leave to intervene in the writ of review proceedings. He noted that, "among other things this petitioner as a party defendant wishes to challenge the interest and standing of said plaintiff Community Planning Organization No. 7 in the above entitled proceedings." Leave to intervene was granted September 28.

On December 19, 1976, the defendant county commissioners moved to quash the writ of review as it pertained to the plaintiff Robert S. Clark on the ground that the plaintiff in his petition had not established an injury of some substantial right of his in order to have standing. The motion was based upon our decision in *Duddles v. City Council of West Linn*, 21 Or App 310, 535 P2d 583, *rev den* (1975). A few days later, on January 6, 1977, intervenor Gordon Merrill moved for an order quashing the writ of review on the ground that neither of the named parties plaintiff had established an injury to some substantial right, and that the plaintiff Robert Clark had not been a party to any process or proceeding before the Planning Commission or the Board of Commissioners. Neither motion was ruled upon at the time.

The matter came on for trial on January 11, 1977. Plaintiff Clark and one other witness testified. The matter was closed with briefs to be submitted by each party.

On March 10, 1977, the trial court entered a memorandum opinion determining that neither of the plaintiffs had standing to sue. Plaintiff CPO #7 appeals.[1]

At the evidentiary hearing, plaintiffs had the burden of proving their standing. *Duddles v. City County of West Linn, supra,* 21 Or App at 328-331.

---

[1] Clark has not appealed. The Board challenged only Clark's standing and it has not argued or filed a brief on appeal.

Clark, who purported to be appearing both in his capacity as an individual and as a member and former chairman of CPO #7, was the only member of CPO #7 who testified at the hearing and that testimony went only to his own interests which would be affected by the proposed land development. There was no proof offered respecting the interests of other members as individuals or of the organization itself in its representative capacity.

Clark testified that he lives approximately 1¾ miles from the rezoned property and is separated from it by a subdivision and a major highway. He testified that he will be injured by the rezoning in three ways: (1) the proposed development will increase the burden on already overcrowded schools which his children will probably attend; (2) it will increase traffic on narrow rural roads which he travels once or twice a week; and (3) unlawful rezoning in conflict with the Comprehensive Framework Plan (CFP), particularly as it mandates consideration of the effect of proposed development on schools and roads, deprives him of assurance that the Board will implement the CFP in other areas.

CPO #7 is part of a Washington County program to involve citizens in the planning process. The Land Conservation and Development Commission has approved the program as complying with its citizen involvement goal. CPO #7 is an unincorporated association without formal rules or organizational structure, except that it has five elected officers. Anyone who attends a meeting is entitled to full participation, including the right to vote. There is no restriction as to place of residence, degree of personal interest, or even as to age.

The only issue before us is whether CPO #7 has standing when it has shown no particular injury to the interests of its members or itself, except in respect to one member. Standing is claimed under either of two theories: (1) a representational theory, deriving standing from the showing made with respect to its one

identified member, or (2) a *de jure* theory, based upon the nature and origin of CPO #7 itself.

The standing of CPO #7, if any, arises from the interworking of two related statutory grants of a right of review, each of which, in different words, articulates the standing requirement. CPO #7 asserts standing as an aggrieved party under former ORS 215.422, which provided:

"(1) A party aggrieved by the action of a hearings officer taken under subsections (1) to (4) of ORS 215.416 may appeal such approval or denial to the governing body of the county. * * *

"(2) * * * [T]he governing body shall hold a hearing on the action of the hearings officer appealed from * * *.

"(3) The governing body may amend, rescind or affirm the action of the hearings officer.

"(4) Any person described by subsection (1) of this section who is aggrieved by the action of the governing body under subsection (3) of this section may seek a review thereof as provided by ORS 34.010 to 34.100."

This statute is pertinent inasmuch as the application for the zone change was heard initially by the planning commission acting as a hearings officer pursuant to ORS 215.406(2). ORS 34.010 to 34.100 set out the procedures and standards for procuring a writ of review.

ORS 34.020 provides:

"*Any party* to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise. * * * (Emphasis added.)

"The writ shall be allowed in all cases where the inferior court, officer, or tribunal other than an agency as defined in subsection (1) of ORS 183.310 in the exercise of judicial or quasi-judicial functions appears to have [acted erroneously] *to the injury of some substantial right of the plaintiff,* and not otherwise. * * *" (Emphasis added.)

[ 76 ]

We note that the two statutory standing requirements ("aggrieved" in ORS 215.422 and "injury to some substantial right" in ORS 34.040) appear in analogous review provisions and serve the same fundamental purpose of requiring plaintiff to show some injury resulting from the official action. No Oregon case has distinguished the two standards, and we see no meaningful or workable distinction between them. Accordingly, we construe them to have equivalent meaning.

We also note that the statutes require both party status and aggrievement.[2]

The uncontroverted evidence showed CPO #7 was a party before the Board, so this aspect of standing was met. The evidence failed, however, to show aggrievement because there was no proof of substantial injury to a cognizable interest.

CPO #7 claims no injury to any of its own interests as an organization, at least in the way a corporation might claim injury to a property right. If CPO #7 is to have standing to obtain a writ, that standing must be based upon one of two theories: (1) a *representational* theory, with CPO #7 serving as the alter ego of some or all of its members, or (2) a *de jure* theory, with CPO #7 having standing based upon its *status* as an organization. We find neither theory applicable here.

## I. REPRESENTATIONAL THEORY

The burden at the evidentiary hearing was on CPO #7 to prove standing. We assume, for purposes of argument, that an organization such as CPO #7 can represent the interests of its individual members. Although it claims hundreds of members, plaintiff's evidence purported to show specific injury to only one person: Clark.

Clark's alleged interest in comprehensive plan enforcement is in the nature of an interest in public

[2]This is unlike the Administrative Procedures Act which confers standing for review based on either element.

policy. The distance between Clark's residence and the subject property, 1¾ miles, and their separation by a major highway do not allow the inferences of injury to interest which would arise from reasonably close proximity. The harm from the slight increase in traffic on roads that Clark travels two or three times a week is not sufficiently significant to justify judicial interference. It is also speculative, as the record indicates a probability that the road will be widened.

Clark's other claim of injury arises from the potential of overcrowded schools. Although more emotionally appealling, we think this complaint is of the same sort as that respecting traffic. Even if school population concerns were of a different nature, however, the evidence here would not justify granting standing to CPO #7 based upon Clark's testimony. Clark testified that he has two children, aged 4 and 9, the latter being presently enrolled in a special school in Portland. He expects that they will attend Five Oaks Intermediate School and Aloha High School, both of which serve the CPO #7 area. According to Clark, the population of the intermediate school is currently slightly under capacity after a realignment of school boundaries which attempted to minimize overcrowding, while the high school population is slightly over capacity. He fears that approval of intervenor's development, together with other suburban growth, will crowd the school system to the detriment of his children's education because the school district has no plans for new school construction.

The trial court found the evidence of overcrowding too speculative to establish an injury because school construction does not precede development, but responds to need.[3] Clark's testimony, however, was that

---

[3]The trial court's finding in its entirety is:

"That he fears school overcrowding is a concern that all people have in a growing area. It is common knowledge, however, that schools respond to need, not the other way around. I have rarely if ever seen a school placed in an area devoid of people or proposed development. On the other hand, all have seen them placed in response to area need."

the schools his children will attend will be over-crowded at least for the time it takes for the school system to respond to the residential development.

This evidence of possible injury to Clark's children's educational opportunities creates at least a plausible basis for standing. However, we reject standing on this record for three reasons:

1. The record as we have summarized it has thus far treated Clark's testimony as entirely correct. The trial judge, however, did not find Clark an altogether credible witness. In fact, he labeled one portion of Clark's testimony "incredible." We thus are faced with a relative rarity: a public interest case in which the pivotal witness' credibility was seriously doubted by the trial judge. Assessing credibility is specifically the trial judge's function. Where, as here, the plaintiff needs a fully credible witness to present an even arguably minimal case for standing, the consequence of the trial judge's view is that plaintiff has failed to carry its burden of proof under *Duddles.*

2. Even if Clark's testimony were accepted uncritically, we would reach the same result. His predictions as to impact on the school system, while not wholly unreasonable, are so largely speculative that they fail to establish a substantial injury in fact to plaintiff. We note particularly that CPO #7 offered no knowledgeable educator such as a representative of the local school system to flesh out the probable consequences to the system of the county's land-use decision, or to authoritatively advise the court as to what planning the system may already have done to meet future contingencies.

3. Finally, we cannot ignore the unusual posture in which the evidence is placed on account of Clark's failure to appeal the trial court's judgment of lack of standing as to him. CPO #7 claims it is entitled to assert the same facts as Clark did for our review to determine whether the organization established an

evidentiary basis for its standing as the representative of its membership. Those facts have been judicially determined to be insufficient to afford a basis to say that Clark established "injury of some substantial right." That determination, having not been appealed, binds Clark. For us now to say that CPO #7 could be held to have standing on the same facts would be equivalent to saying that the rights of the representor rise above those of the represented. When determination of standing depends upon a *factual* showing, that cannot be so if there is no basis for a conclusion that the claimed injuries to the individuals' interests, whether or not separately satisfying the substantiality test of the statute, collectively satisfy the test. *See Hunt v. Washington Apple Advertising Comm'n, supra,* 432 US 333, 343, 97 S Ct 2434, 53 L Ed 2d 383 (1977). Here, given Clark's purely self-oriented claims and the unappealed determination against him, there is not sufficient evidence of injury to the collective interests of CPO #7's membership on the basis of Clark's testimony.

We conclude that CPO #7 does not have standing, in its representational capacity, to seek this writ of review. There remains the question of whether it has *de jure* standing.

## II. STANDING BASED UPON *DE JURE* CAPACITY

■ In *Duddles v. City Council of West Linn, supra,* where we established a procedure for the hearing of facts from which to determine whether plaintiff has a sufficient stake to warrant standing, we were dealing with individuals who sought to challenge a zoning action and we recognized that their standing depended upon a showing of actual or potential injury in fact. In the instant case, we are dealing with an organization which conceivably could have standing as a matter of law. While an individual must establish standing on the basis of an injury to a substantial right distinct from that of members of the public at large, *see Eacret*

*v. Holmes,* 215 Or 121, 124-15, 333 P2d 741 (1958), that is not necessarily true in the case of an organization. In *Eacret,* the Oregon Supreme Court used the term "special injury" in the context of a declaratory judgment proceeding to deny standing for the enforcement of public policy to one whose interest did not differ from that of other members of the public.

LCDC Goal 1, OAR 660-16-000 (Appendix A) requires every government subdivision having land use planning authority to establish a procedure for effective citizen participation. Under that goal, CPO #7 is one of 14 such organizations established by Washington County Order 74-84 to implement the citizen involvement provisions of the Washington County Comprehensive Framework Plan. LCDC has approved the CPO *program* as complying with ORS 197.160(2) and Goal 1. The Washington County Community Development Ordinance establishes a formal procedure for certification of "neighborhood organizations" which, once certified, are *thereafter* entitled to party status in administrative hearings. Washington County Community Development Ordinance, section 2201-3.10. While it appears that no CPO has formally complied with the ordinance, the county has followed the practice of admitting CPO as parties in its land use proceedings, as it did in this instance.

CPO #7 has never organized beyond electing some officers and submitting their names and addresses to the county; further, it considers as members anyone, regardless of area of residence, who attends its meetings or whose name appears on its mailing list. The County Planning Department notifies the organization's officers of all zone change and plan amendment applications affecting land within its boundaries and furnishes the organization with copies of staff reports. CPO #7 mails copies of its agenda for its monthly meetings and its newsletters to everyone on its mailing list. In this instance CPO #7 participated in the zone change proceedings before the County Planning

Commission and before the Board, and the county admitted CPO #7 as a party under its Community Development Ordinance. Thus it could be argued that CPO #7 is at least *de jure* a designated agency for insuring citizen participation in land use decisions in accordance with the overall, statewide scheme imposed by ORS ch 197.

Several considerations militate against recognition of #7 as a *de jure* entity entitled to standing:

■■ 1. CPO #7 has not taken even the minimal steps necessary to become formally qualified to participate in the Washington County CPO program. Without doing so, any attempt to bolster its status by reference to an apparent approval of LCDC is unsuccessful. LCDC was approving a program where CPOs *organized,* as the Washington County program apparently said they would. LCDC has not in any sense endorsed the unorganized amorphous operation presently called "CPO #7." Even if it had done so, however, we would not necessarily agree that any group founded to serve a purpose under the LCDC Goals would, *ipso facto,* be entitled to standing to seek a writ of review. Agency approval is no substitute for a court's own duty to examine and assess the qualifications for an applicant for a writ of review under ORS 34.040 and *Duddles.*

2. Neither is the County's acceptance of CPO #7 participation persusasive. The record here shows that, while it may listen to CPO's representative, the county has no present way of determining whom CPO truly represents. The County may, for political or other reasons, consider what it does to be advisable. In order to have its efforts survive LCDC scrutiny, it may consider what it does necessary. But no circuit court is bound by such a determination.

3. Finally, the trial court's denial of standing to CPO #7 is most persuasively justified by what the record here shows CPO #7 to be at the time this case

was heard: an organization without a defined membership in which anyone who attends a meeting can fully participate and whose policy decisions could literally be made on the basis of a voting majority made up entirely of persons from outside the CPO #7 geographical area, or of employees of a land developer or of children.

It follows that, on the record here, the decision to prosecute this writ of review may have been taken by a few people, or many, by a large vote, or a small one, and by a majority composed in whole or in part of minor children and individuals who do not even live in CPO #7 or, for that matter, in Washington County. A county may choose to listen to the views of such an amorphous group in its land use planning process, but a court is not required by that fact alone to accord to the group standing to seek judicial relief. The burden was on the CPO #7 to establish its standing. *Duddles v. City Council of West Linn, supra.* In choosing to offer only the testimony of Clark, CPO #7 failed to meet its burden.

Affirmed.

**JOSEPH, J.,** concurring in part and dissenting in part.

I concur in that part of the majority's opinion which would deny CPO #7 standing in its representational capacity. I disagree with that part of the opinion which would deny CPO #7's standing in its organizational capacity. I therefore dissent, noting at the outset that the Board of County Commissioners has not appealed. The intervenor challenged CPO #7's standing only in its representational capacity.

The organization's involvement in the zone change went beyond "a mere 'interest in the problem.' " *See Sierra Club v. Morton,* 405 US 727, 739, 92 S Ct 1361, 31 L Ed 2d 636 (1972). LCDC Goal 1, OAR 660-16-000 (Appendix A), requires every government subdivision having land use planning authority to establish a

procedure for effective citizen participation. Under that goal, CPO #7 is one of 14 such organizations established by Washington County. Order 74-84 to implement the citizen involvement provisions of the Washington County Comprehensive Framework Plan. LCDC has approved the CPO program as complying with ORS 197.160(2) and Goal 1. The Washington County Community Development Ordinance establishes a formal procedure for certification of "neighborhood organizations" which, once certified, are thereafter entitled to party status in administrative hearings. Washington County Community Development Ordinance, section 2201-3.10. While it appears that no CPO has formally complied with the ordinance, the county has followed the practice of admitting CPO's as parties in its land use proceedings. It did in this instance specifically.

Apparently CPO #7 has never organizationally gone beyond electing some officers and submitting their names and addresses to the county; further, it considers as members anyone, regardless of area of residence, who attends its meetings or whose name appears on its mailing list. The County Planning Department notifies the organization's officers of all zone change and plan amendment applications affecting land within its boundaries and furnishes the organization with copies of staff reports. CPO #7 mails copies of its agenda for its monthly meetings and its newsletters to everyone on its mailing list. In this instance CPO #7 participated in the zone change proceedings before the County Planning Commission and before the Board. Thus it appears that CPO #7 is at least *de jure* a designated agency for insuring citizen participation in land use decisions in accordance with the overall state-wide scheme imposed by ORS ch 197.

In the petition for writ of review it was alleged: "CPO #7's members have an interest in the integrity of the [Comprehensive Framework Plan] as it applies

[ 84 ]

to the CPO #7 area as well as an interest in the quality of urban services available in the area, both of which interests are adversely affected by the Board's action as hereinafter set forth." The petition then alleged that the Board failed to follow the procedure applicable to the matter before it by failing to make certain specific findings,[1] made a finding which was not supported by reliable, probative and substantial evidence[2] and made an order based on findings not supported by reliable, probative and substantial evidence and improperly construed the applicable law in other particulars.[3]

---

[1] "(a) That granting the requested change is in the public interest;

"(b) That the public interest is best carried out by granting the requested change and that the public interest is best served by granting the requested change at this time;

"(c) That the requested change fully accords with the applicable map elements of the relevant CFP and also the goals and policies of the CFP;

"(d) That the factors listed in ORS 215.055 were consciously considered;

"(e) Respecting plaintiffs' and the Board's Planning Commission's staff's contentions before the Board that the subject site does not meet criteria for conversion to urban use set forth in CFP, policy no. 24;

"(f) Respecting plaintiffs' contentions before the Board that the requested change does not meet the criteria of CFP, policy no. 22, respecting affected road and school capacities and related urban services;

"(g) Respecting plaintiffs' contentions before the Board that portions of the subject site are within the 100-year floodplain and therefore improperly designated 'urban' or 'urban intermediate' rather than 'natural resource' in the CFP."

[2] " 'That there is an unequivocal public need for the zone change from RS-1 (surburban residential district) to RU-4 (low-density urban residential).' "

[3] "(a) That granting the requested change is in the public interest;

"(b) That the public interest is best carried out by granting the requested change and that the public interest is best served by granting the requested change at this time;

"(c) That the requested change fully accords with the applicable map elements of the relevant CFP and also the goals and policies of the CFP;

"(d) That the factors listed in ORS 215.055 were consciously considered;

The allegations of the petition assert that Washington County made a land use decision that substantially violated the applicable statutes, regulations and its own ordinances. The challenge is brought by an organization recognized by the county as a source of public input into the planning process, an input that is mandated by the LCDC goal. To shield a possibly unlawful decision from judicial review at the behest of an organization designated by the county to represent the public interest is incongruous indeed. To be sure, it is indefensible so long as the challenges are *prima facie* substantial and made in good faith. The county has not appeared to defend the integrity of its own decision-making process. The intervenor, whose interest is purely private, would have us deny review because the organization has not made a showing of "some specific injury to the association or its members." I would conclude that, given the nature of CPO #7, it has standing to assert it is injured because it has a substantial right to have the county comply with the statutes, regulations and its own ordinances. I am satisfied that CPO #7 has standing because, in the words of *Sierra Club v. Morton, supra,* 405 US at 740, review is being "sought in the hands of those who have a direct stake in the outcome."

I would therefore reverse and remand this matter to the Board.

THORNTON, J., joins in this concurrence and dissent.

"(e) Respecting plaintiffs' and the Board's Planning Commission's staff's contentions before the Board that the subject site does not meet criteria for conversion to urban use set forth in CFP, policy no. 24;

"(f) Respecting plaintiffs' contentions before the Board that the requested change does not meet the criteria of CFP, policy no. 22, respecting affected road and school capacities and related urban services;

"(g) Respecting plaintiffs' contentions before the Board the portions of the subject site are within the 100-year floodplain and therefore improperly designated 'urban' or 'urban intermediate' rather than 'natural resource' in the CFP."