Argued November 29, 1978, reversed and remanded
for further proceedings April 30, 1979

# 1000 FRIENDS OF OREGON, *Petitioner,*
## *v.*
# MULTNOMAH COUNTY, et al, *Respondents,*
### *and*
# EASTMONT PROPERTY OWNERS ASSOCIATION,et al,
### *Intervenors-Respondents.*
## (LCDC No. 77-031, CA 11258)
593 P2d 1171

Robert E. Stacey, Jr., Portland, argued the cause and filed the brief for petitioner.

Lawrence Kressel, Deputy County Counsel, argued the cause for respondents, Multnomah County. With him on the brief was John B. Leahy, County Counsel, Portland.

Before Schwab, Chief Judge, and Johnson,[*] Gillette and Roberts, Judges.

GILLETTE, J.

---

[*] Johnson, J., resigned December 18, 1978.

**GILLETTE, J.**

Petitioner seeks judicial review of an order of the Land Conservation and Development Commission (LCDC) dismissing its petition for review of certain plan designations and zoning ordinances adopted by Multnomah County. LCDC held that petitioners lack standing. We reverse.

The essential facts of the case are as follows. On September 6, 1977, Multnomah County enacted Ordinance No. 147, adopting the "Multnomah County Comprehensive Framework Plan," and Ordinance No. 148, establishing zoning in accordance with the plan. Together, these ordinances established land-use designations for lands outside Multnomah County urban growth boundaries, amounting to over 17,000 acres. Petitioner challenged these ordinances before LCDC, alleging that the ordinances violated LCDC Goal 2, Land Use Planning, and Goal 3, Agricultural Lands, and that an "exceptions statement" prepared by the county failed to contain adequate justification for the planning and zoning decisions. The land-use designations challenged by petitioner related to three "subareas": "West Hills," approximately 2,500 acres; "Orient," approximately 9000 acres, and "Corbett," approximately 4,700 acres.

The county and the intervenors, Eastmont Property Owners Association and Elmer Sturm, challenged petitioner's standing, alleging that petitioner "is not a person or group whose interests are substantially affected" by the county's planning and zoning actions.

Thereafter, pursuant to petitioner's request, a hearings officer conducted an evidentiary hearing on the standing issue. Based on the evidence produced at that hearing, the hearings officer made the following findings of fact:

"1. 1,000 Friends of Oregon is the assumed business name of Oregon Land Use Project, a nonprofit Oregon corporation created October 1, 1974, to 'secure reasonable implementation of laws relating to land use in the State of Oregon.'

[919]

"2. Petitioner [1000 Friends] neither owns nor occupies land subject to the comprehensive plan and zoning provisions in question.

"3. Petitioner itself will not be substantially affected by the challenged provisions.

"4. One of petitioner's members, Jeffrey Rogers, owns real property in the West Hills MUA area.

"5. Another member, William Van Dyke, occasionally goes for recreational drives through the Corbett and Springdale area, which he enjoys for its scenic farm character. He lives in Portland and neither resides, works, or [sic] owns property within the MUA, RR, and MUF areas in question.

"6. Both Mr. Van Dyke and Mr. Rogers are advocates of the planning goals of Petitioner, which the County concedes to be 'a strong ideological advocate for enforcement of the statewide planning goals.' Mr. Rogers, in particular, is concerned about the effect of the County's action as a precedent concerning application of Goals Two and Three. Mr. Rogers is an officer of 1,000 Friends.

"7. A third member of 1,000 Friends, Clifford Kenagy, lives in Corvallis and farms owned and leased lands in rural Benton County. Some of these lands are on the urban fringe and are similar with respect to parcelization and agricultural-residential conflicts to properties in the Orient MUA district. Mr. Kenagy reasonably believes that permitting residential construction as an outright use on agricultural land will tend to drive the purchase and rental price of such land up, discouraging farmers from using it and accelerating the conversion of such lands to non-agricultural uses.

"8. Based on the testimony of Petitioner's fourth witness, Scott Buley, I find that Mr. Buley is not a member of Petitioner, that he is a horticulturist, that he has attempted to purchase land for horticulture in the Orient area, and that he has found that prices in the area are prohibitively high because of speculative pressures resulting in part from the potential of the property for residential development. [Footnote omitted.]

"9. I find that Petitioner represents its members' interests in this proceeding and that its representation has been vigorous and capable as the indeed vigorous and capable advocacy of the county and the intervenors."

The hearings officer ruled, *inter alia*, that petitioner had standing to represent its members' interests in the proceeding. LCDC, after reviewing the hearings officer's recommendations, found that petitioner had failed to establish that it or any of its members were substantially affected by all of the designations in question.

More specifically, LCDC found, based upon the facts set forth in the recommendation of the hearings officer, that one member of petitioner had standing which would be appropriate if the issue raised by petitioner were the West Hills, but that the issue raised by the petitioner is the entire county zoning and he does not have standing to challenge that, nor do either of the other members of petitioner.

Petitioner has appealed, arguing that LCDC has improperly interpreted the applicable statutes in dismissing the petition for lack of standing.

PRELIMINARY ISSUES

We are met at the outset with a disagreement over the extent of the record on review. LCDC held no evidentiary hearing of its own apart from that conducted by its hearings officer, did not review the transcript made before the hearings officer, and did not make separate findings of fact. Instead, it expressly based its decision with regard to standing "upon the facts set forth in the recommendation of the hearings officer." At respondents' request, a transcript of the proceedings before the hearings officer has since been prepared and placed in the record before this court. Respondents argue that we should consider the transcript, although LCDC did not. Respondents contend that LCDC and this court are not bound by the hearings officer's findings, and that the transcript is

in fact a part of the record, citing as authority ORS 183.415(7)(b) and (8). The effect of including the transcript in the record could be to allow respondents to argue the following points based on the transcript: (1) the "ex post facto" nature of petitioner's claim to representational standing; (2) the lack of relationship between petitioner's allegations as to standing in its petition to LCDC and the evidence produced at the hearing; and (3) the lack of evidence supporting certain findings of the hearings officer.

The proceedings before the hearings officer and LCDC are governed by the contested case provisions of the Oregon Administrative Procedures Act, ORS ch 183. *See* ORS 197.305(2); OAR 660-01-085(3); OAR 660-01-100.

Under ORS 183.482(7), "[r]eview of a contested case shall be confined to the record." ORS 183.482(4) requires an agency to "transmit to the reviewing court the * * * entire record of the proceeding under review."[1] We have never been called upon to decide whether the record to which this court is confined under ORS 183.482(7), or the "record of the proceeding under review," ORS 183.482(4), is that considered by the final decision-makers, or the entire record compiled in a two-step agency proceeding. We find it unnecessary to do so now.

■  In the present case, none of the parties excepted to any of the hearings officer's findings on the basis that they were not supported by the record,[2] or referred LCDC to the record by making the other challenges

---

[1] The intervenors expressly designated as part of the record for review by LCDC "all evidence obtained at all hearings on the matters which are the subject of this review proceeding."

[2] The intervenors did except to any finding that the zoning action "has led to an increase of cost of land due to speculation," arguing such a finding is not supported by reliable, probative, or substantial evidence. The hearings officer made no such finding, finding only that the zoning "*is more likely than not* to increase the cost of the affected agricultural land to potential buyers. * * *" (Emphasis added.)

noted *supra* at page 5, made here for the first time.[3] Under *Acc. Prev. Div. v. Van Eyk*, 31 Or App 1355, 572 P2d 671 (1977), *rev den* (1978), this court will not review arguments not properly raised in the agency proceeding. Further, LCDC expressly relied on the hearing officer's findings in deciding adversely to petitioner on the standing issue. Where those findings were not challenged below, giving LCDC cause to examine the record of the evidentiary hearing, respondents will not be permitted to challenge them for the first time based on a transcript not considered by LCDC.

## PETITIONER'S STANDING

### A. Representational Standing

A preliminary issue in the standing discussion is whether 1000 Friends has representational standing to represent the interests of its members who have standing. The federal rule has been stated as follows:

> "* * * Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Hunt v. Washington Apple Advertising Comm'n*, 432 US 333, 343, 97 S Ct 2434, 53 L Ed 2d 383, 394 (1977).

---

[3] In its brief to the hearings officer, which was filed after the evidentiary hearing and before the hearings officer's recommendations, and which was before LCDC, respondent urged LCDC to refer to the record to discern "the remoteness, generality and intangibility of the actual interests possessed by petitioner and its members in the challenged plan and zoning legislation." Respondent did not, however, argue any facts differing materially from those found by the hearings officer; the argument was directed at the application of the law of standing to evidence produced at the hearing, as interpreted by respondent. As stated *supra*, respondent did not except to the hearing officer's findings, but only to his conclusions of law based on those findings. Thus, on the record before it LCDC had no reason to examine the record of the evidentiary hearing to determine whether it supported the hearings officer's recommendations.

Respondents, citing *Sierra Club v. Morton*, 405 US 727. 92 S Ct 1361, 31 L Ed 2d 636 (1972) and *Warth v. Seldin*, 422 US 490, 95 S Ct 2197, 45 L Ed 2d 343 (1975), apparently concede that, in the abstract, an association may have such representational standing to represent its members who themselves would have standing. With this concession we agree. In light of 1000 Friend's avowed purpose of "attempting to secure reasonable implementation of laws relating to land use in the State of Oregon," 1000 Friends is an appropriate association to assert representational standing in a case in which its members would have standing. *Cf. Clark v. Dagg*, 38 Or App 71, 588 P2d 1298 (1979). The question then becomes, do any of petitioner's members have standing to challenge *this* land use decision?

## B. Standing of Petitioner's Members

### 1. The proper standard

■ Any person "whose interests are substantially affected" may challenge a land-use decision under ORS 197.300(1)(d) by petitioning LCDC. The parties have vigorously argued their positions as to whether the statutory "substantially affected" test for standing is the same as the federal "trivial impact" test, *see, e.g., U. S. v. Scrap*, 412 US 669, 93 S Ct 2405, 37 L Ed 2d 254 (1972); or is a stricter test, placing emphasis on the connection between the perceived injury and the challenged state action, *see, e.g., Simon v. Eastern Kentucky Welfare Rights Org.*, 426 US 26, 96 S Ct 1917, 48 L Ed 2d 450 (1976); or, within the express terms of the statute, emphasizes the degree of impact which the challenged provisions exert on petitioner's interest. For the reasons which follow, we find it unnecessary to choose among the proposed standards, since under any of these standards and under Oregon case law Rogers, the landowner in West Hills, has standing to challenge the planning and zoning ordinances.

[924]

## 2. Rogers' standing

As the hearings officer found, "One of petitioner's members, Jeffrey Rogers, owns real property in the West Hills MUA area." This finding is undisputed. It is also undisputed that the challenged planning and zoning ordinances changed the zoning applicable to Rogers' and the surrounding property. In *Duddles v. City Council of West Linn, supra,* this court noted that "a property owner in reasonably close proximity—such as within sight or sound of a proposed use of land—should ordinarily have standing to challenge a zoning decision." 21 Or App at 328. Mr. Rogers is not only in "reasonably close proximity" to rezoned land; he owns rezoned land. His interest is sufficient under any standard to grant him standing.[4]

Rogers' interests can be said to be "substantially affected" by the reclassification of his and the surrounding land. Petitioner asserts that:

> "* * * The land use regulations authorized by the plan for the lands described in those paragraphs permit, without further review or approval by respondent, the construction of hundreds of single-family residences which would not be permitted under the exclusive farm use zoning made applicable by the Agricultural Lands Goal. The addition of large numbers of residences and of other uses not permitted under EFU zoning will remove from production land now in farm use. These residences and other uses will substantially interfere with farm operations on adjoining lands. The existence of the right to build a residence on any existing lot or on any newly-created legal lot will increase the speculative value of land beyond the purchasing power of prudent farm investors. Each of these effects will reduce the agricultural production of the lands described in paragraphs VIII and IX [including the West Hills],

---

[4] We did not intend to suggest in *Duddles,* nor do we here, that LCDC could not establish rules setting out other reasonable criteria for establishing standing. Where LCDC has not done so, however, the task becomes ours. *See Fish and Wildlife Dept. v. LCDC,* 37 Or App 607, 615, 588 P2d 80 (1978).

and will increase the number of dwellings, roads and other permanent structures on those lands, diminishing their scenic character."

Respondents and the intervenors dispute these contentions. The hearings officer found that

"* * * the County's decision, even if taken in accordance with all LCDC goals, is more likely than not to increase the cost of the affected agricultural land to potential buyers, including farmers, and that agricultural use will probably decrease as a result. Some deterioration in the scenic and aesthetic qualities of the affected areas is a probable side effect."

This finding was not challenged before LCDC, which relied on it in its finding that Rogers would have standing appropriate to challenge that portion of the county ordinances affecting the West Hills. A change in the character and use of neighboring land, including their scenic value, is enough to grant petitioner's member, Mr. Rogers, standing under the "substantially affected" test. *Cf. Clark v. Dagg, supra; Sierra Club v. Morton, supra; Duddles v. City Council of West Linn, supra.*

Respondents further argue, however, that under the "zone of interests" test petitioner's interest in the "scenic beauty" of the affected lands is not within the "zone of interests" protected by the statewide goals placed in issue by the petition, Land Use Planning, No. 2, and Agricultural Lands, No. 3. The "zone of interest" test of standing turns on "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations v. Camp,* 397 US 150, 153, 90 S Ct 827, 25 L Ed 2d 184, 188 (1970). Even assuming the "zone of interests" test applies here, respondent is incorrect. Contrary to respondent's underlying assumptions, the Goals are not to be read as tightly compartmentalized statements of mutually exclusive land-use objectives, but rather as broad, coordinated policy statements for

[926]

the planning and implementation of sound land use in Oregon. *See generally* ORS 197.005, which emphasizes "coordinated statewide land conservation and development." ORS 197.005(4). Thus, the simple labeling of one goal as "Agricultural Lands" does not restrict the interests protected thereby solely to agriculture. An examination of the Goals reveals the specific error in respondent's argument. Goal 3, Agricultural Lands, states, *inter alia,*

> "* * * Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and *open space."* (Emphasis added.)

The conservation of open spaces is also one of the stated objectives of Goal 5, Open Spaces, Scenic and Historic Areas, and Natural Resources. Under Goal 5, open spaces consist, *inter alia,* of land which "would, if preserved and continued in its present use * * * [c]onserve and enhance natural or *scenic resources."* (emphasis added.) Thus, the preservation of scenic beauty is considered one of the benefits growing from proper implementation of Goal 3, Agricultural Lands.

3. Severance

■ As already noted, LCDC held that "one member of Petitioner had standing which would be appropriate if the issue raised by the Petitioner were the West Hills, but * * * the issue raised by the Petitioner is the entire county zoning and he does not have standing for that." This holding raises the issue of possible severance, for standing purposes, of the portion of the planning and zoning ordinances affecting the West Hills from those portions affecting other sections of Multnomah County. Respondent Multnomah County made this argument in its brief to the hearings officer, stating:

> "* * * At most, petitioner ought to derive from Mr. Rogers an interest in that portion of respondent's land use plan and zoning provisions affecting the West Hills area, or parts thereof. These areas are logically severable from lands east of the Willamette which petitioner would also bring into issue here, but

in which neither petitioner nor its members have a substantial direct interest."

The starting point for an analysis of the possibility of severance is ORS 197.300(1)(d), the statute under which petitioner asserts standing for itself and its members. That statute provides:

"In the manner provided in ORS 197.305 to 197.315, the commission shall review upon:

"* * * * *

"(d) Petition by any person or group of persons whose interests are substantially affected, a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation alleged to be in violation of state-wide planning goals approved under ORS 197.240."

The statute contemplates that a single person may challenge a large-scale land-use decision. Contrary to LCDC's interpretation, the statute does not purport to require that every portion of a comprehensive plan or any other land-use decision must affect the person making the challenge. As a practical matter such a requirement would make it nearly impossible for a person to challenge a large-scale land-use decision such as that made by Multnomah County here, since it would likely require that person to own property in all areas of the county affected. Interpreting ORS 197.300(1)(d) to mandate such a result would tend to defeat its purpose. The only reasonable construction of the statute focuses not on how much of the land-use decision affects the person, but upon whether that person's interests—whatever they are—were in fact "substantially affected" by some portion of the decision.

Applying a concept of severance, however, would permit planning bodies to design large-scale comprehensive plans and allow persons affected by only certain aspects of those plans to challenge those aspects, while preventing those persons from including in their challenge portions of the plan in which

[928]

they have no interest beyond that of a gadfly. Particularly in a case in which several aspects of a land-use decision involve distinct legal and factual issues, the benefits growing from severance may weigh heavily. In the present case, however, it appears that identical legal issues affect all of the areas in question and predominate in the case on the merits. Therefore, any argument which might be made for a "distinct legal and factual issues" justification for severance is not appropriate rezoned area for the standing analysis is not appropriate.[5]

We conclude that Rogers' interests are "substantially affected" by the county's zoning actions here; that the nature of Rogers' challenge is a proper one; that his challenge to the action is not susceptible to limitation to some portion of the area zoned, as opposed to the whole of it; and that 1000 Friends, appearing in a representational capacity, has the same standing.

Reversed and remanded for further proceedings.

---

[5] Further, severance here would create unnecessary problems for the court in this and every subsequent land-use case involving standing. Respondent's argument that the West Hills area is "logically severable" is facile. Rogers, the landowner in question, owns a 4-acre tract in the West Hills, an area consisting of approximately 2,500 acres. The argument could be made that the rezoning of the entire 2,500 acres does not affect the landowner; only some smaller portion of the zoning action affects his interests. We note that respondent suggested that Mr. Roger's interest may only extend to "parts" of the West Hills area. The logical extreme to this argument is that a landowner could only challenge that part of a land-use decision that affects land within "sight or sound" of his own rezoned property. *Cf. Duddles v. City Council of West Linn*, 21 Or App 310, 535 P2d 583, *rev den* 1975). The practical problems involved in such an approach would be horrendous, and we decline to follow it.