Argued and submitted November 23, 1981, affirmed March 22,
reconsideration denied April 29,
petition for review allowed May 11, 1982 (293 Or 146)

# BENTON COUNTY,
*Petitioner,*

*v.*

# FRIENDS OF BENTON COUNTY,
*Respondent.*

## (LUBA No. 81-024, CA A21709)

642 P2d 358

Richard T. Ligon, Benton County County Counsel, Corvallis, argued the cause and filed the brief for petitioner.

Richard C. Stein, Salem, argued the cause for respondent. With him on the brief was Ramsay, Stein, Feibleman & Myers, Salem.

Before Gillette, Presiding Judge, and Joseph, Chief Judge, and Roberts, Judge Pro Tempore.

ROBERTS, J. Pro Tempore.*

---

*Appointed to Supreme Court February 8, 1982.

**ROBERTS, J.** Pro Tempore.

The subject of this appeal is a conditional use permit issued by Benton County Commissioners to allow expansion of an existing gravel extraction operation in an area designated by the Benton County Comprehensive Plan for exclusive farm use. The Land Use Board of Appeals (LUBA) remanded the matter to the county after finding that the county violated its comprehensive plan and conditional use ordinance in granting the permit. Benton County appeals[1] on the ground that respondent Friends of Benton County had no standing to appear before LUBA.[2] We affirm.

■ Friends of Benton County's claim to standing is based on a representation theory, *i.e.,* that it has standing to bring suit derived from the right of its members to bring suit. *See 1000 Friends of Oregon v. Multnomah Co.,* 39 Or App 917, 593 P2d 1171 (1979). The specific basis put forth to support respondent's standing is a claim that one of its members, Mr. Kenagy, is a person "adversely affected" or "aggrieved" by the granting of the conditional use permit, as those terms are used in Or Laws 1979, ch 772, § 4(3)(b).[3] We said in *1000 Friends* that injury to the interests of one

---

[1] We raised at oral argument a question as to why Benton County, and not the operator of the gravel operation, is the petitioner on appeal, even though Or Laws 1979, ch 772, § 6a(1) clearly gives the county, as a party before LUBA, the right to appeal. The operator, Morse Brothers, Inc., appeared before the Benton County Planning Commission and the Board of County Commissioners and was named, along with Benton County, as a respondent in the appeal before LUBA. Though Morse Brothers filed a statement of interest to participate before LUBA, the record contains only Benton County's brief in that proceeding. Before us, counsel for the county stated that the time and effort spent by his office in the adjudications below justified its providing what amounts to a publicly financed appeal to further the interests of a private corporation.

[2] Petitioner does not appeal the substance of LUBA's order.

[3] Or Laws 1979, ch 772, § 4(3)(b) provides in pertinent part:

"(3) Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

"* * * * *

"(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

member of an organization may be sufficient to establish standing in a representational capacity. 39 Or App at 928.[4]

Mr. Kenagy's affidavit in support of his individual standing is uncontroverted. It states that he operates a 328-acre farm two miles downstream from the extracting site,[5] that some of the former river channels aim in the direction of his house, which is located 70 feet from the bank's edge and 140 feet from the low water mark, and that any change in the river channel caused by the gravel extraction upstream could place his home in jeopardy. Petitioner's argument is that Mr. Kenagy's claim is so speculative that it fails to establish that he is an "aggrieved" person. LUBA found that Mr. Kenagy's affidavit, coupled with testimony in the record from the Army Corps of Engineers, provided sufficient "likelihood of the injury should the facts plead

---

[4] The only issue raised by petitioner is whether Mr. Kenagy's individual standing is sufficiently demonstrated. Petitioner, in effect, concedes that if Mr. Kenagy has standing, the claim by Friends of Benton County that it "represents" him is adequate to establish its organizational standing before LUBA. Though it has not been made an issue in this case, we point out, for purposes of future litigation, that the standing of an organization in a representational capacity is a separate issue from the standing of an aggrieved member or members and is governed by the test set forth in *1000 Friends of Oregon v. Multnomah County, supra,* adopted from *Hunt v. Washington Apple Advertising Comm'n.,* 432 US 333, 343, 97 S Ct 2434, 53 L Ed 2d 383 (1977). That test requires an organization seeking representational standing to show that (1) its members have standing to sue in their own right, (2) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit and (3) the interests the organization seeks to protect are germane to the organization's purpose. 39 Or App at 923.

In *1000 Friends,* the hearings officer made a finding that

"1,000 Friends of Oregon is the assumed business name of Oregon Land Use project, a nonprofit Oregon corporation created October 1, 1974, to secure reasonable implementation of laws relating to land use in the State of Oregon." 39 Or App at 919.

In the case before us, by comparison, the record shows only that Friends of Benton County is "an Oregon non-profit corporation with members throughout Benton County, living in both rural and urban areas." Because petitioner has challenged the organization's standing only *via* Kenagy, we have not decided this case on the separate basis of the organization's standing. However, the better practice of lawyers for an organization such as Friends of Benton County is to place in the record before the agency facts demonstrating standing which are adequate to meet the *Hunt/1000 Friends* test. In addition, LUBA Rule 7(C)(1) requires a petition for review to set out the facts that establish a petitioner's standing and applies to associations and organizations as well as to individuals.

[5] Petitioner says in its brief that the Kenagy farm is two land miles from the site, but four miles downstream.

*[sic]* be true" to establish standing for Friends of Benton County to appear before it.

The evidence relied upon by LUBA was a letter from the acting chief of the planning branch of the Portland District, Army Corps of Engineers. This letter stated that the Corps had inspected the subject site and that:

> "Under the current river conditions, no detrimental effect on the stability of the river channel will occur if a 200-foot-wide buffer strip is left between the mining operation and Willamette River and East Channel. However, should erosion of the bankline immediately upstream of Corvallis Location occur, additional riprap protection would be needed to prevent the encroachment of the river channel into the gravel mining area. Such encroachment would accelerate channel alterations, exposing new lands to erosion and possibly cause the river to migrate away from the city of Corvallis' water intake. Corvallis Location revetment would be destroyed in the process."

LUBA's opinion noted that the county had not required construction of a 200-foot buffer strip as a condition of approval for the conditional use permit and that, while compliance with the Corps of Engineers' rules was required, "it has not been suggested that such a buffer is part of the Corps' body of 'rules.' "

■ We said in *Duddles v. City of West Linn,* 21 Or App 310, 328, 535 P2d 585 (1975), that

> "a property owner in reasonably close proximity — such as within sight or sound of a proposed use of land — should ordinarily have standing to challenge a zoning decision."

Petitioner argues that Mr. Kenagy is not in close proximity to the subject property and has not alleged that he can hear or see the land use. Petitioner construes the cited language from *Duddles* too narrowly. In *Duddles* the petitioners' claim was that a zone change from residential to commercial injured the environmental and aesthetic living conditions in their quiet, wooded residential neighborhood. "Sight and sound" of the proposed development was thus a significant element of the claimed injury. In the instant case, Mr. Kenagy's alleged injury is the threat of a change in the river channel which would jeopardize his home. Sight and sound are irrelevant. He is, for purposes of standing, in "reasonably close proximity" to the proposed gravel

pit if his property is close enough so that development of the area as planned threatens him with potential injury. The opponent of a zoning action need not wait until harm has actually occurred. We said in *Clark v. Dagg,* 38 Or App 71, 79, 588 P2d 1298 (1979), that "possible injury * * * creates at least a plausible basis for standing." 38 Or App at 79.

In *Clark* the alleged injury to children's educational opportunities was found to be "largely speculative," and therefore insufficient to establish a substantial injury in fact to the petitioner-parent, for two principal reasons. First, the trial court seriously doubted the petitioner's credibility. Second, we noted that the petitioner's predictions as to the impact of the zoning change on the local school system were his alone and were not supported by any evidence from a knowledgeable expert, such as a representative of the local school system. In the case before us, Mr. Kenagy's credibility was not at issue, and he supplied, in addition to his own testimony, a letter from the Army Corps of Engineers supporting his contention that expansion of the mining operation as proposed could cause alterations in the river channels. This additional evidence supplies the objective "expert" element found lacking in *Clark* and, in our view, amounts to the showing of potential injury in fact required by *Clark* and *Duddles.* Mr. Kenagy was, therefore, a person aggrieved or adversely affected by the county's granting of the conditional use permit as those terms are used in Or Laws 1979, ch 772, § 4(3)(b). Because the only challenge to respondent's standing was based upon Mr. Kenagy's individual standing, LUBA's decision is affirmed.

Affirmed.