The JEFFERSON LANDFILL
COMMITTEE et al,
*Petitioners,*

*v.*

MARION COUNTY et al,
*Respondents.*

(82-005; CA A25167)

671 P2d 763

M. Chapin Milbank, Salem, argued the cause and filed the brief for petitioners.

Robert C. Cannon, Marion County Legal Counsel, Salem, argued the cause and filed the brief for respondent Marion County.

Richard C. Stein, Salem, argued the cause for respondents Schlitt and Browns Island, Inc. With him on the brief was Ramsay, Stein, Feibleman & Myers, Salem.

RICHARDSON, J.

Buttler, J., dissenting.

### RICHARDSON, J.

Petitioners appeal from a Land Use Board of Appeals (LUBA) order dismissing their appeal to LUBA from a land use decision by Marion County. The issue is whether LUBA erred in concluding that petitioners lack standing to appeal under section 4(3) of Oregon Laws 1979, chapter 772, as amended by Oregon Laws 1981, chapter 748.[1] Section 4(3) provides:

> "Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

> "(a)   Appeared before the city, county or special district governing body or state agency orally or in writing; and

> "(b)   Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

Petitioner Fahey is a member of petitioner Jefferson Landfill Committee. The committee contends that it has "representational standing." To have representational standing, an organization must show, *inter alia*, that " 'its members would otherwise have standing to sue in their own right.' " *1000 Friends of Oregon v. Multnomah Co.,* 39 Or App 917, 923, 593 P2d 1171 (1979), quoting *Hunt v. Washington Apple Advertising Comm'n,* 432 US 333, 343, 97 S Ct 2434, 53 L Ed 2d 383 (1977); *but see Benton County v. Friends of Benton County,* 294 Or 79, 81-82, 653 P2d 1249 (1982). The only member of the committee who petitioners argue has standing to appeal to LUBA in his own right is Fahey; if he does not have standing, the committee does not.

Fahey appeared before the county commissioners to oppose the land use decision he now challenges, and he therefore satisfied the threshold standing requirement of section 4(3)(a). However, LUBA concluded that Fahey's allegation that "he was entitled as of right to notice of the county's decision" was not supported by the record and that

---

[1] This section was repealed, Or Laws 1983, ch 827, § 59, effective October 1, 1983. Section 31(3) of the 1983 act establishes standing criteria for appeals to LUBA from quasi-judicial land use decisions.

Fahey had not alleged "any facts which show how his interests are adversely affected or how he is aggrieved by the decision." LUBA therefore ruled that Fahey did not meet any of the standing criteria of section 4(3)(b). Petitioners appeal from the resulting order of dismissal.

■ The only question that requires discussion is whether the Supreme Court concluded in *Benton County v. Friends of Benton County, supra,* decided after LUBA dismissed petitioners' appeal, that a person like Fahey, who appeared before the governing body as an interested person and asserted a position on the merits, necessarily has standing to appeal to LUBA as an "aggrieved" person, if the governing body's decision is contrary to the position he asserted. The following language in *Benton County* may so suggest:

> "* * * A person whose interest in the decision has been recognized by the body making a quasi-judicial decision and who has appeared and asserted a position on the merits as an interested person, rather than only as a source of information or expertise, can be 'aggrieved' by an adverse decision within the meaning of section 4(3). As in *Marbet [v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977)], to be 'aggrieved' a person must be more than abstractly dissatisfied with the outcome after the fact. The decision must be contrary to the request or other position that the person espoused during the proceeding." 294 Or at 89.

For a number of reasons, we do not understand the quoted language as mandating the conclusion that Fahey's appearance before the governing body is enough in itself to give him standing as a person aggrieved by that body's decision.

The court emphasized at the outset in *Benton County* that being "adversely affected" and being "aggrieved" are separate and different bases for standing under section 4(3). The court ultimately *held,* in effect, that there was sufficient evidence to support LUBA's finding that a member of Friends of Benton County was adversely affected by the challenged land use decision and had standing for that reason. It follows that everything the court said about the "aggrieved" basis for standing is dictum.

Standing alone, the quoted dictum may or may not mean that any person "who has appeared and asserted a

position on the merits as an interested person" *necessarily* is "aggrieved" by an adverse decision. It is noteworthy that the Supreme Court's word choice in the dictum was "can be 'aggrieved' " rather than "is 'aggrieved' "; indeed, the entire discussion of the "aggrieved" concept in *Benton County* is replete with words such as "can," "may" and others suggesting that the discussion was aimed at outlining general considerations rather than articulating decisional principles.

More significantly, the quoted dictum does *not* stand alone in *Benton County*. Another dictum states:

> "* * * Who is 'aggrieved' also may vary with the land use goal or other governing criteria that is said to be violated by the challenged decision. * * *" 294 Or at 88. (Footnote omitted.)

*That* dictum is not consistent with the implication in the first that anyone who has appeared and unsuccessfully asserted a position is *ipso facto* "aggrieved." There can be no such *general* rule, if being "aggrieved" can depend on the issues involved in the land use decision.

■    Section 4(3) confers standing on any person who (a) appeared before the local governing body *and* (b) was entitled to notice and hearing *or* was adversely affected *or* was aggrieved. If any person who appears before the local governing body as an interested person and asserts a position on the merits which the governing body does not adopt is automatically aggrieved and, *without more,* has standing, being entitled to notice and hearing or being adversely affected could *never* be relevant to standing, and being aggrieved could be relevant only insofar as it is a necessary concomitant of an unsuccessful appearance before the governing body. Stated otherwise, all of subsection (b) of the standing statute would be meaningless or extraneous. We do not think the Supreme Court intended to construe the statute in that manner.

■    In sum, there are dicta in *Benton County* which *can* be read as supporting the conclusion that petitioner Fahey is aggrieved and therefore has standing simply because he appeared before the governing body as an interested person to assert a position that was not adopted. There are also dicta in the same opinion which seem inconsistent with that conclusion. In our view, a conclusion that Fahey has standing would be contrary to the statute that the Supreme Court construed

in *Benton County* and we construe here. The language in *Benton County* we find compatible with the statute is no less binding on us than the language which may not be compatible with it, but we are not required to misconstrue the statute here. Petitioner Fahey was not aggrieved by the county's decision, and petitioners' arguments do not persuade us that LUBA's order was erroneous on any other ground.

Affirmed.

**BUTTLER, J.,** dissenting.

Because I do not think we may pass off as mere commentary the studied analysis contained in *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982), of the requirement for standing under section 4(3), I dissent. The question is not whether we agree or disagree; rather, it is what the Supreme Court meant to accomplish by its extended discussion and analysis of the problem and its interpretation of the statute in question.

Concededly, there are instances where an appellate court makes an incidental comment that is unnecessary to its decision in the case. In such cases, we, or other courts, may give little weight to the comment, because it is dictum or, perhaps, obiter dictum. I cannot read *Benton County* that way. The issue was whether *Friends of Benton County* were "adversely affected" or "aggrieved" within the meaning of the statute. Accordingly, the court's interpretation of the statute was not only relevant, but it was material, to its disposition of the case.

The court held that the interpretation of the statutory words "adversely affected" or "aggrieved" in section 4(3) is a question of law to be decided by the court, citing *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979). It went on to discuss the two terms, stating that "aggrieved" means something more than being dissatisfied with the agency's order, yet distinct from being "adversely affected" by it. The court pointed out that the statute does not limit either adverse affect or aggrievement to property interests which must be in physical "proximity" to the disputed land use; it stated that it understood "aggrieved" to mean something distinct from an adverse affect on some personal self-interest. It went on to state that

"* * * [i]n general rulemaking there ordinarily are no 'parties' to the proceeding who can assert that they 'lost' the decision, but persons who were not parties to the proceeding may be adversely affected by the rule and be allowed by an applicable law to challenge its legality. A quasi-judicial proceeding, on the other hand, implies that the decision involves application of preexisting criteria or the determination of particular facts or both, and that some persons are entitled to be heard before a decision is reached. *Cf. Neuberger v. City of Portland,* 288 Or 155, 603 P2d 771 (1979), *reh den* 288 Or 585, 607 P2d 722 (1980); *Strawberry Hill 4 Wheelers [v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979)]. *A person whose interest in the decision has been recognized by the body making a quasi-judicial decision and who has appeared and asserted a position on the merits as an interested person, rather than only as a source of information or expertise, can be 'aggrieved' by an adverse decision within the meaning of section 4(3).* As in *Marbet [v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977)], to be 'aggrieved' a person must be more than abstractly dissatisfied with the outcome after the fact. The decision must be contrary to the request or other position that the person espoused during the proceeding." 294 Or at 88-89. (Emphasis supplied.)

To say, as the majority do, that the court's use of the phrase "can be aggrieved," rather than "is aggrieved," means that one fitting the profile described in the quotation above does not necessarily have standing is to render the court's language nothing more than a truism. I cannot believe that the court intentionally said nothing. It is true that the court did not decide *Benton County* solely on the basis of the quoted language interpreting the statute, and for that reason, the majority conclude that we may ignore the court's discussion and interpretation of the statutory language in question. I do not believe we can; we should take it at face value.

Here, Fahey fulfilled the first requirement of section 4(3), in that he appeared at the hearing in opposition to the proposed action. LUBA's finding that he was not entitled to notice as of right is supported by the record, leaving as the dispositive issue whether he was "adversely affected" or "aggrieved" by the county's decision.

Given the Supreme Court's interpretation of "aggrieved," the benefit of which LUBA did not have, it appears that Fahey qualifies. Although the record does not

expressly indicate whether he appeared before the County Commission as an interested person, the only reasonable inference from the record is that it was for that reason that he appeared. That is, he did not appear only "as a source of information or expertise," but did so because his residence is about two and one-half miles from the proposed landfill. The record indicates that he is a member of the committee and that the committee was formed to oppose the landfill in question. Accordingly, it is reasonable to infer that he appeared in opposition to the commission's decision.

On the assumption that the court meant what it said in *Benton County,* even though its broad interpretation of "aggrieved" appears to require less for standing than the statutory language mandates, I would reverse and remand to LUBA.

Rossman and Newman, JJ, join in this dissent.